IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| MICHAEL N. GRAY,<br><br>Plaintiff,<br><br>v.<br><br>LIEUTENANT DEGROFF, OFFICER T. MALACHI, and OFFICER A. MOTTOX,<br><br>Defendants, | Civil Case No. 4:25-cv-02686-JD<br><br>**ORDER AND OPINION** |

This matter is before the Court on the Report and Recommendation ("Report") of United States Magistrate Judge Thomas E. Rogers, III, issued pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.). (DE 75.) The Report addresses Defendants Lieutenant Degroff, Officer T. Malachi, and Officer A. Mottox's Motion for Summary Judgment. (DE 48.) It recommends granting the Motion as to Plaintiff Michael N. Gray's failure-to-protect claim, his official-capacity claims for monetary damages, and all claims against Degroff and Mottox, but denying summary judgment on Plaintiff's individual-capacity Eighth Amendment excessive-force claim against Malachi and Malachi's qualified-immunity defense. (DE 75 at 13–28.)

Defendants timely object to the portions of the Report recommending denial of summary judgment to Malachi. (DE 80.) Plaintiff filed no objections. The Court has conducted de novo review of the challenged portions of the Report, including independent review of the surveillance footage submitted as Exhibit E to Defendants' Motion. (DE 48-6.) For the reasons below, the Court sustains Defendants' objections,

adopts the Report in part and rejects it in part, and grants Defendants' Motion for Summary Judgment in full.

**A. Background**

The Report sets forth the broader factual record, which the Court incorporates except to the extent modified below. (DE 75 at 4–10.) The dispute material to Defendants' objections is narrow and arises from an October 10, 2024, inmate altercation in the Wateree housing unit at Broad River Correctional Institution. The unit was on lockdown, and correctional officers were conducting inmate showers. (Malachi Aff. ¶ 4, DE 53 at 2; DE 75.)

Plaintiff and inmate Travis Jones had a verbal confrontation before the physical fight. Plaintiff acknowledges that, after returning to the lower tier, he armed himself with the head of a push broom, concealed it in his clothing, and went back upstairs to Jones. (DE 69-1 at 4-5; Gray Aff. ¶ 3, DE 69-2 at 3–4.) The inmates then fought. Plaintiff states that Jones possessed a knife and stabbed him twice before Plaintiff disarmed Jones and used the edged weapon against Jones in self-defense. (Gray Aff. ¶ 3, DE 69-2 at 4–5.) Malachi likewise states that he observed Plaintiff possess the edged weapon and stab Jones. (Malachi Aff. ¶ 18, DE 53 at 4.) Thus, although the parties dispute the circumstances leading to the stabbing, they agree that Plaintiff had possession of the edged weapon during the latter portion of the fight.

Malachi responded to the altercation and deployed chemical munitions. The Report notes Malachi's initial use of chemical munitions while the inmates were

fighting. (DE 75 at 18–19.) But the dispute concerns the seconds immediately after Jones disengaged. Malachi avers that Jones backed away after the initial application, that Plaintiff continued holding the edged weapon despite directives to drop it, and that Plaintiff "moved in my direction, appearing to turn towards me with the knife in his hand." (Malachi Aff. ¶ 21, DE 53 at 4.) Malachi states that he then applied an additional burst and stopped after Plaintiff relinquished the weapon and began to lie face down near the stairs. (*Id.*)

Plaintiff offers a materially different characterization. In his sworn declaration, he states that after the inmates separated and he stood up, Malachi and Officer Samuel Beach sprayed him with chemical munitions, and that "at no point before or after" did he threaten security or "come towards them holding a knife." (Gray Aff. ¶ 3, DE 69-2 at 5.) Plaintiff also relies on an SCDC MINS report reflecting 232 grams of chemical munitions attributed to Malachi and 76 grams attributed to Beach during the incident. (DE 69-4 at 18; DE 75 at 20–21.)

The surveillance video is therefore central to the Rule 56 analysis. The recording contains no audio. (DE 75 at 19 n.5.) It does, however, depict the relevant sequence continuously. Malachi reaches the upper tier while Plaintiff and Jones are still engaged and initially directs chemical munitions toward the fight. (DE 48-6 at approximately 5:40–5:46.) Jones then withdraws toward the rear corner. Plaintiff rises from the same area while still holding the object the parties agree was the edged weapon. He turns and moves from the corner toward the stair landing and the responding officers, with the weapon remaining in his hand. (*Id.* at approximately

5:46–5:50; *see also* DE 80-2 at 2–3.) Plaintiff then turns into the short stairway and lowers himself onto the steps. The video does not clearly reveal the precise instant the weapon leaves Plaintiff's hand, but the chemical application ceases substantially contemporaneously with his submission. At any rate, no additional chemical force is visible once Plaintiff is down. (DE 48-6 at approximately 5:50–5:52; DE 80-2 at 4.)

**B. Report and Recommendation**

The Report first addressed Plaintiff's failure-to-protect claim. (DE 75 at 11–15.) It found insufficient evidence that any Defendant knew before the incident that Jones posed a substantial risk to Plaintiff. The Report noted that Plaintiff returned to the upper tier after the earlier confrontation knowing Jones had a knife and carrying the broom head as a weapon. The Report also relied on the video showing Malachi reached the fight within seconds and deployed chemical munitions, after which the altercation ended. It therefore recommended summary judgment for all Defendants on the failure-to-protect claim. (DE 75 at 15.)

On excessive force, the Report applied the objective and subjective Eighth Amendment framework and the *Whitley* factors. (*Id.* at 15–23.) The Report distinguished Malachi's initial burst toward both inmates, which it described as directed at stopping the active altercation, from the continued chemical application after Jones disengaged. The Report nevertheless found genuine disputes concerning the continued chemical application after Jones disengaged. The Report noted that the soundless video did not resolve whether Plaintiff moved toward staff with the weapon or whether commands to drop it were given. The Report also noted that the video

showed Malachi and Beach spraying Plaintiff from approximately 5:46 to 5:52 as Plaintiff stood, moved to the stairs, and lay down. Lastly, the MINS report attributed 232 grams to Malachi and 76 grams to Beach for the incident. (DE 75 at 16–22.) Based on those circumstances, the Report recommended denying summary judgment on the individual-capacity excessive-force claim against Malachi. Yet the Report recommended granting summary judgment to Degroff and Mottox because they did not participate in the chemical-force episode. (*Id*. at 22–23.)

The Report separately recommended summary judgment on Plaintiff's official-capacity claims for monetary damages because Defendants were SCDC employees entitled to Eleventh Amendment immunity in their official capacities. (DE 75 at 23–25.) On qualified immunity, the Report recommended immunity for Degroff and Mottox because the record showed no constitutional violation by them. As to Malachi, however, it reasoned that the unresolved excessive-force issues precluded judgment on the first immunity prong and that Fourth Circuit law prohibited using chemical agents in quantities greater than necessary or solely to inflict pain. It therefore recommended denying Malachi qualified immunity. (*Id*. at 25–29.)

Defendants agree with the recommendations in their favor and object only to the recommended denial of summary judgment and qualified immunity to Malachi. (DE 80 at 1.) They argue that the Report gave insufficient effect to the continuous video and to Plaintiff's undisputed possession of the edged weapon after Jones withdrew. They also argue that the 232-gram MINS figure is an incident-wide total that does not identify the amount Malachi used during the disputed post-fight

seconds, that some of Malachi's spray was directed at Jones, and that Beach's separate 76-gram deployment does not establish Malachi's state of mind. (*Id*. at 2–7.) Defendants also contend that Plaintiff did not establish a sufficiently serious injury and renew qualified immunity, arguing both that no constitutional violation occurred and, alternatively, that no clearly established law prohibited the brief continued use of chemical force against an inmate who had just stabbed another inmate and remained armed. (*Id*. at 6–10.)

### C. Standards of Review

#### 1. Report and Recommendation

A magistrate judge's recommendation carries no presumptive weight, and the district court retains responsibility for the final determination. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The court conducts de novo review of any portion of the report to which a party makes a specific written objection and may "accept, reject, or modify" the recommended disposition. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). When no specific objection is made, the court need only determine that no clear error appears on the face of the record. *Diamond v. Colonial Life & Accident Insurance Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

#### 2. Summary Judgment and Video Evidence

Summary judgment is appropriate when the movant shows that no genuine dispute exists as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is genuine only if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court ordinarily views competent

evidence and draws reasonable inferences in the nonmovant's favor without weighing credibility. *Id.* at 255.

That rule does not require a court to adopt a factual version that objective video evidence forecloses. As the Supreme Court explained, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record," the contradicted version need not be accepted at summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007). The Fourth Circuit applies the same principle in prisoner excessive-force cases. *See Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). The Court therefore accepts Plaintiff's supported account except where the surveillance recording resolves a material point beyond genuine dispute.

**3. Eighth Amendment Excessive Force**

An Eighth Amendment excessive-force claim has objective and subjective components. *Dean v. Jones*, 984 F.3d 295, 302–03 (4th Cir. 2021). The objective component asks whether the force employed was more than *de minimis*; the focus is the nature of the force, not a threshold level of injury. *Id.* at 303–04; *see Wilkins v. Gaddy*, 559 U.S. 34, 37–39 (2010). A sustained application of pepper spray can satisfy that component. *Dean*, 984 F.3d at 303–04.

The subjective component is the dispositive issue here. The "core judicial inquiry" is whether force was applied "in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). In *Whitley*, the Supreme Court established four non-exclusive factors to assist courts in assessing whether an officer has acted with "wantonness":

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful response.

*Iko*, 535 F.3d at 239 (citing *Whitley v. Albers*, 475 U.S. 312, 321 (1986) (internal quotation omitted)). Those factors are used to infer actual motive—whether the force was plausibly directed to a legitimate security objective or instead to punishment. *See Brooks v. Johnson*, 924 F.3d 104, 113, 116 (4th Cir. 2019).

That distinction matters at summary judgment. The Eighth Amendment inquiry is not simply whether a hypothetical reasonable officer could have used force; it asks whether the particular officer in fact used force for a permissible disciplinary or security reason. *Brooks*, 924 F.3d at 113. At the same time, *Brooks* recognizes that a "manifest and immediate need for the protective use of force" may create a "powerful logical inference" that the force was in fact protective rather than punitive. *Id.* at 116.

Chemical agents are not unconstitutional per se. The Fourth Circuit has recognized that a "limited application of mace may be much more humane and effective than a flesh to flesh confrontation," while also holding that chemical agents may not be used "in quantities greater than necessary or for the sole purpose of infliction of pain." *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996) (internal quotation marks omitted). The inquiry remains fact-specific and considers the provocation, amount of chemical agent, and purpose for which it was used. *Bailey v. Turner*, 736 F.2d 963, 969 (4th Cir. 1984).

### D. Discussion

#### 1. Unobjected-to Recommendations

Plaintiff filed no objections, and Defendants do not challenge the recommendations that summary judgment be granted on Plaintiff's failure-to-protect claim, his claims for monetary damages against Defendants in their official capacities, or the claims against Degroff and Mottox, including the qualified-immunity recommendation as to those two Defendants. (DE 80 at 1.) The Court has reviewed those portions of the Report for clear error and finds none. *See Diamond*, 416 F.3d at 315. The Court adopts those portions of the Report.

#### 2. The Excessive-Force Claim Against Malachi

##### a. The video materially narrows the factual dispute.

The Report correctly recognized that Plaintiff's sworn declaration is competent Rule 56 evidence and that the absence of audio prevents the Court from determining what verbal commands were given during the critical seconds. (DE 75 at 19-21; Gray Aff. ¶ 5, DE 69-2 at 5.) But the moving video resolves a different and important point more clearly than the written submissions or isolated still frames.

Plaintiff categorically swears that he did not "c[o]me towards" security while holding the knife. (Gray Aff. ¶ 3, DE 69-2 at 5.) The continuous recording does not permit a reasonable jury to accept that statement literally. After Jones withdraws, Plaintiff rises from the rear corner while still armed, turns, and moves several steps from that corner toward the stair landing occupied by responding staff. (DE 48-6 at approximately 5:46–5:50.) Defendants' screenshots capture portions of the same

movement. (DE 80-2 at 2–3.) The Court therefore does not adopt Plaintiff's contrary description on that narrow factual point. *See Scott*, 550 U.S. at 380.

Defendants are correct that the video contradicts Plaintiff's categorical statement that he did not come *towards* security while holding the weapon. But the objections overread the recording to the extent they contend it conclusively proves that Plaintiff was charging Malachi or intended to attack an officer. The stairway on which Plaintiff ultimately submits lies in the same general direction, and the recording has no audio from which the Court can determine what commands were given. Consistent with Rule 56, the Court assumes Plaintiff was attempting to move toward the stairs to surrender rather than launch another attack. Even with that favorable inference, however, Plaintiff remained armed with the weapon he had just used in a stabbing and had not yet relinquished it while moving near the responding officers and Jones. The chemical application continued only through the short transition in which Plaintiff turned to the stairs and lowered himself, and it stopped as he went down. (DE 48-6 at approximately 5:49–5:52.)

**b. The objective component is satisfied.**

Defendants argue that Plaintiff did not establish a sufficiently serious injury from the chemical munitions. (DE 80 at 6–7.) That argument does not support summary judgment. As *Wilkins* and *Dean* make clear, "what matters is the severity of the force employed," not a threshold quantity of resulting injury. *Dean*, 984 F.3d at 303 (citing *Wilkins*, 559 U.S. at 39). Indeed, the Fourth Circuit has recognized that even a two-to-three-second use of pepper spray may constitute more than *de minimis*

force. *Id*. at 303–04. Viewing the chemical application in Plaintiff's favor, the objective component is satisfied. The claim therefore turns on the subjective *Whitley* inquiry.

**c. The Whitley factors do not permit a reasonable inference of malicious or sadistic purpose.**

Defendants also rely on Malachi's sworn assertion that his purpose was to restore order and that he used only the force he believed necessary. (Malachi Aff. ¶¶ 26–27, DE 53 at 5; DE 80 at 3–4.) Those assertions do not themselves resolve the subjective component. A plaintiff may prove malicious intent circumstantially through the *Whitley* factors, and the Court may not simply credit an officer's characterization of his own motive. *See Brooks*, 924 F.3d at 116. The question is whether the complete Rule 56 record, including the video and the facts viewed favorably to Plaintiff, contains evidence from which a reasonable jury could infer punitive rather than protective force. It does not.

First, the need for force was substantial. Malachi arrived during an active, armed inmate fight. Plaintiff had possession of an edged weapon and had just stabbed Jones. (Malachi Aff. ¶ 18, DE 53 at 4; Gray Aff. ¶ 3, DE 69-2 at 4–5.) Although Jones then withdrew, Plaintiff did not become unarmed at the same time. The continuing need was not merely to respond to the preceding fight; it was to secure an inmate who still possessed the weapon immediately after using it. This case therefore differs from *Brooks*, where the inmate was handcuffed, surrounded by officers, and presented "no immediate physical safety risk." 924 F.3d at 116.

Second, the relationship between the need and the amount of force weighs in Malachi's favor on this record. The additional application lasted only the seconds

during which Plaintiff remained standing and armed and then moved into a prone position. (DE 48-6 at approximately 5:46–5:52.) Malachi did not strike Plaintiff, move within grappling distance, or continue spraying after Plaintiff was down. Chemical force allowed staff to maintain distance from an edged weapon while compelling submission. *Williams* recognized that a limited chemical application may be "much more humane and effective than a flesh to flesh confrontation" and may itself reflect a tempered response. 77 F.3d at 763–64.

As to the deployment of the chemical agent, the Court does not treat quantity as immaterial. *Bailey* and *Williams* expressly require consideration of the amount of chemical agent used. *See Bailey*, 736 F.2d at 969; *Williams*, 77 F.3d at 763. The evidentiary problem is different: the MINS report attributes 232 grams to Malachi for the incident, not for the disputed post-fight interval. (DE 69-4 at 18.) The video shows that Malachi first sprayed while both inmates were fighting, and the Report distinguished that fight-stopping application from the continued spraying after the altercation ceased. (DE 48-6 at approximately 5:40–5:46; DE 75 at 19–22.) Nothing in the MINS report allocates Malachi's total between that initial application, spray directed toward Jones, and the later seconds directed at Plaintiff. Defendants' original memorandum incorrectly referred to a five-gram figure, and Defendants corrected that error in their objections. (DE 48-1 at 8–9; DE 80 at 5 n.1.) The corrected 232-gram total is relevant, but without temporal allocation it does not establish the amount of Malachi's challenged application or support a reasonable inference that his purpose during those seconds was punitive.

The Report also considered that Beach was spraying Plaintiff during the same interval. (DE 75 at 21–22.) That circumstance is relevant to the total force Plaintiff experienced, but the claim against Malachi still requires evidence from which Malachi's own malicious purpose may be inferred. The record does not show that Malachi knew the quantity Beach was deploying, coordinated a combined dosage with him, or controlled Beach's separate 76-gram deployment. (DE 69-4 at 18; DE 80 at 5–6.) Concurrent use by Beach therefore does not, without more, convert Malachi's brief application during the same armed event into evidence of punitive intent.

Nor do the quantity-focused district court decisions cited by the Report, including *Wright* and *China*, establish a numerical threshold that changes the result. In *Wright v. Mack*, the Court denied summary judgment where an officer discharged 167 grams of chemical munitions against a single inmate allegedly kicking his cell door, emphasizing that even under the officer's account the inmate's conduct did not threaten staff or other inmates. 2013 WL 3946286, at *2–3 (D.S.C. July 31, 2013). The court also observed that it had "never directly stated an acceptable amount of chemical munitions." *Id.* at *2 n.3. In *China v. Coles*, the court denied summary judgment where an additional 163 grams were deployed after an earlier spray and material disputes remained both as to the threat posed by the inmate and whether the underlying flooding threat had already been mitigated by shutting off the water. 2017 WL 1190875, at *4 (D.S.C. Mar. 31, 2017). Both decisions applied the circumstance-specific inquiry required by *Bailey*; neither treated the weight of chemical munitions as dispositive apart from the need for force, the provocation or

threat presented, and the purpose for which the force was used. Here, by contrast, Plaintiff's continuing possession of the recently used edged weapon is undisputed.

Third, the reasonably perceived threat strongly favors Malachi. The constitutional inquiry does not freeze at the instant Jones stepped away. Plaintiff remained within the same upper-tier area, continued to possess the edged weapon, and moved from the corner toward staff before turning onto the stairs. (DE 48-6 at approximately 5:46–5:50.) *Whitley* requires consideration of the threat "as reasonably perceived by the responsible officials on the basis of the facts known to them[.]" 475 U.S. at 321. The Supreme Court there held that an inmate's equivocal movement up prison stairs could reasonably be perceived as threatening even though the inmate said he was trying to return to his cell; officers had only seconds to react and were not required to determine his benign purpose before responding. *Id.* at 323–26. Here too, even assuming Plaintiff intended to surrender rather than attack, his continued possession of an edged weapon he had just used to stab another inmate supplied an immediate protective reason for Malachi to continue trying to secure the weapon. On this recording, that security justification had not expired.

Fourth, the response was tempered. The officers used chemical munitions from a distance rather than immediately closing into hand-to-hand contact with an armed inmate. The application ceased substantially contemporaneously with Plaintiff lowering himself to the stairs and becoming prone. (DE 48-6 at approximately 5:50–5:52.) The video does not reveal the precise instant the weapon left Plaintiff's hand, but Malachi states that no chemical munitions were applied after Plaintiff dropped

it. Moreover, Plaintiff identifies no contrary post-subdual application, and the recording shows none after he is down. Plaintiff was then restrained and escorted for medical treatment. (Malachi Aff. ¶ 23, DE 53 at 4.)

**d. Brooks, Dean, and Iko do not require a trial on these facts.**

The Fourth Circuit's decisions in *Brooks*, *Dean*, and *Iko* provide the most significant counterpoint to summary judgment because each recognizes that force initially justified by a legitimate security need may become unconstitutional if continued after that justification has ended. Those cases therefore sharpen the dispositive question here: whether the evidence, viewed in Plaintiff's favor, would permit a reasonable jury to find that Malachi continued using chemical force after the security justification for that force had dissipated. *See Brooks*, 924 F.3d at 114–18; *Dean*, 984 F.3d at 304–06; *Iko*, 535 F.3d at 239–40. The relevant line is thus not simply the moment the inmate-on-inmate fighting stopped, but the point at which the need to use force to secure Plaintiff and the weapon had ended.

The factual break between justified and allegedly punitive force was substantially clearer in those cases. In *Brooks*, the inmate was handcuffed and held by multiple officers, presented no immediate physical safety risk, and was subjected to three taser deployments over roughly seventy seconds, including a second shock while he lay on the ground. 924 F.3d at 108–09, 114–18. In *Dean*, the plaintiff's summary-judgment version had him fully subdued, handcuffed, and nonresistant when the challenged force was used; the Fourth Circuit emphasized that officers may not use gratuitous force against a prisoner who has "already been subdued" or

incapacitated. 984 F.3d at 304. *Iko* likewise involved additional pepper-spray bursts after the inmate attempted compliance, remained "docile and passive," and ultimately lay on the floor. The *Iko* Court reasoned that the threat the officers reasonably perceived decreased significantly as the spraying continued. 535 F.3d at 239–40.

The recording here shows no comparable interval of post-neutralization force. After Jones withdrew, Plaintiff remained unrestrained and continued to possess the edged weapon he had just used against Jones. As Plaintiff moved from the corner toward the stair area and then began lowering himself onto the steps, the chemical application continued only through that brief transition and ceased substantially contemporaneously with his becoming prone. (DE 48-6 at approximately 5:46–5:52.) There is no visible post-subdual burst comparable to *Iko*, no separated or repeated later deployment comparable to *Brooks*, and Plaintiff was not already restrained and disarmed when the challenged force was used as in *Dean*. The critical distinction is therefore not merely that this episode unfolded quickly. It is that the circumstance supplying the continuing protective justification, Plaintiff's possession of the recently used edged weapon, persisted throughout the challenged seconds.

Nor does this conclusion depend on finding that Plaintiff intended to attack Malachi. As explained above, the Court assumes for purposes of Rule 56 that Plaintiff was moving toward the stairs to surrender rather than to launch another attack. But *Whitley* directs courts to consider the threat as reasonably perceived by prison officials in the circumstances confronting them. *Whitley* also recognizes that

equivocal movement during a rapidly unfolding prison-security event need not be interpreted according to an inmate's benign purpose before officers act. *See Whitley*, 475 U.S. at 321, 323–26. Here, even under Plaintiff's favorable account of his intent, he remained unrestrained and armed with an edged weapon immediately after a stabbing while officers were attempting to regain control of the upper tier. The security justification for securing Plaintiff and the weapon therefore had not dissipated merely because Jones had stepped away.

Taken as a whole, the Rule 56 record permits disagreement about whether Malachi could have ceased spraying a second or two earlier as Plaintiff lowered himself onto the stairs. But the Eighth Amendment does not constitutionalize every arguable error in split-second prison-security judgment. *See Whitley*, 475 U.S. at 323–26. The question is whether the evidence would permit a reasonable jury to infer that Malachi continued the spray not to secure an armed inmate and restore control, but "maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. On this record, Plaintiff's undisputed continued possession of the recently used edged weapon, the brief and continuous character of the challenged application, and the cessation of force substantially contemporaneously with Plaintiff's submission leave no sufficient evidentiary basis for that inference. Rule 56 does not require trial where the evidence is "so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. No reasonable jury viewing the continuous sequence could find that Malachi used the challenged chemical force to cause harm.

Defendants' objection to the Report's excessive-force recommendation is therefore sustained. The Court rejects the Report to the extent it recommends denying summary judgment to Malachi and grants summary judgment on Plaintiff's individual-capacity excessive-force claim.

**3. Qualified Immunity**

Defendants also object to the Report's recommendation that Malachi be denied qualified immunity. (DE 80 at 8–10.) Qualified immunity shields an official from damages unless the plaintiff shows both a violation of a constitutional right and that the right was clearly established at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Courts may address either prong first. *Pearson v. Callahan,* 555 U.S. 223, 236 (2009).

For the above reasons, the Rule 56 record does not permit a reasonable finding that Malachi violated Plaintiff's Eighth Amendment rights. The first qualified-immunity prong is therefore not satisfied. The Court accordingly need not decide Defendants' alternative objection that the right must be defined more narrowly or whether *Williams*, *Iko*, *Brooks*, and *Dean* clearly established the unlawfulness of the challenged conduct in October 2024. *See Pearson*, 555 U.S. at 236. Defendants' objection to the Report's qualified-immunity recommendation is sustained on the first prong.

**E. Conclusion**

For the foregoing reasons, it is ORDERED that:

1. Defendants' objections to the Report and Recommendation (DE 80) are SUSTAINED;

2. The Report and Recommendation (DE 75) is ADOPTED IN PART as to the recommendations granting summary judgment on Plaintiff's failure-to-protect claim, official-capacity monetary-damages claims, and claims against Defendants Degroff and Mottox, and is REJECTED IN PART as to the recommendations concerning Plaintiff's excessive-force claim against Defendant Malachi and Malachi's qualified-immunity defense;

3. Defendants' Motion for Summary Judgment (DE 48) is GRANTED in full;

4. Judgment shall be entered in favor of Defendants Lieutenant Degroff, Officer T. Malachi, and Officer A. Mottox on all claims; and

5. The Clerk of Court shall enter judgment consistent with this Order and close the case.

**IT IS SO ORDERED**.

Joseph Dawson, III
United States District Judge

Florence, South Carolina
August 24, 2026

**NOTICE OF RIGHT TO APPEAL**

A party seeking to appeal must file a notice of appeal with the Clerk of Court within thirty (30) days after entry of the judgment. Fed. R. App. P. 3, 4(a)(1)(A).